**IN THE UNITED STATES DISTRICT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **JOE HAND PROMOTIONS, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **5:09-cv-276 (CAR)** |
| | : | |
| **BERNARD V. MCBROOM,** | : | |
| **individually, and as officer, director,** | : | |
| **shareholder, and/or principal of** | : | |
| **FAMADAU, INC., d/b/a MILANO'S** | : | |
| **ITALIAN RESTAURANT; and** | : | |
| **FAMADAU, INC., d/b/a MILANO'S** | : | |
| **ITALIAN RESTAURANT** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

*ORDER ON MOTION FOR DEFAULT JUDGMENT*

In the present case, Plaintiff filed a Motion for Default Judgment [Doc. 7] against Defendants Bernard McBroom ("McBroom"), individually, and as officer, director, shareholder, and/or principal of Famadau, Inc., d/b/a Milano's Italian Restaurant ("Restaurant") and the Restaurant. Plaintiff seeks statutory damages for Defendants' broadcast of a boxing match without Plaintiff's authorization in violation of the Communications Act of 1934, as amended, 47 U.S.C. § 605. Defendants were served with the summons and Complaint but never filed a responsive pleading. Plaintiff then filed a Motion for Entry of Default [Doc. 6], which was entered by the Clerk on November 3, 2009. On November 13, 2009, Plaintiff filed the current Motion. Having fully considered Plaintiff's Motion, the filed Complaint, the submitted evidence, and the relevant case law, the Court **GRANTS** Plaintiff's Motion. Accordingly, default judgment should be entered in favor of **PLAINTIFF** and against Defendants, and appropriate relief is due to be awarded as

discussed below.  <u>See</u> Fed. R. Civ. P. 55(b).

## FACTS

Plaintiff is in the business of buying the exclusive rights of Pay-Per-View broadcasts and subsequently selling those rights to various commercial establishments.  After Plaintiff began suffering a serious erosion of broadcast sales, Plaintiff discovered that the root cause was the piracy of its broadcasts by unauthorized and unlicensed establishments.  Thus, Plaintiff embarked on a program to identify and prosecute commercial establishments pirating its broadcasts.  Plaintiff hired Signal Auditing, Inc., an investigative agency, which then hired independent auditors who identified establishments that unlawfully exhibited Plaintiff's broadcasts.  One such establishment identified was the Restaurant.

In this case, Plaintiff purchased the exclusive right to distribute the Ultimate Fighting Championship #91 broadcast of a boxing match ("Program") via closed circuit television and encrypted satellite signal.  Plaintiff then sold the right to receive an unscrambled signal to view the Program to various entities in Georgia, who subsequently exhibited the fight to their patrons.  The Program was broadcast on November 15, 2008.  Auditor, Jerrell Solomon, visited the Restaurant the night the Program was broadcast.  During his audit, he independently verified the exhibition of the Program and that Defendants had not purchased the right to view the Program from Plaintiff.  The auditor noted that the Restaurant did not charge an admittance fee to view the fight, and although the Restaurant had a maximum capacity of 200, he only saw eight patrons in the Restaurant.

Plaintiff contends that its programs cannot be mistakenly or innocently intercepted; rather, the unscrambling of the Program could only have been accomplished through willful and deliberate means.  Plaintiff filed its Complaint on August 11, 2009, alleging that Defendants knowingly and willingly violated the Communications Act of 1934, as amended, 47 U.S.C. § 605.  Specifically,

Plaintiff claims that Defendants unlawfully intercepted, received, and exhibited the Program within its establishment for commercial advantage or private gain. Proof of service was filed on September 28, 2009.

Defendants have not answered or otherwise acknowledged the pendency of this suit. Plaintiff received an entry of default on November 3, 2009, and on November 13, 2009, Plaintiff filed the present Motion for Default Judgment [Doc. 7]. Under 47 U.S.C. § 605, Plaintiff seeks the maximum amount of statutory damages of up to $110,000, plus attorney's fees and costs of $1,686.

## DISCUSSION

### A.    Default Judgment Standard

Prior to obtaining a default judgment, the party seeking judgment must first seek an entry of default. See Fed. R. Civ. P. 55(a). Plaintiff has satisfied this requirement. After entry of default, Plaintiff is required to seek default judgment from the Court. Fed. R. Civ. P. 55(b)(2) ("[T]he party entitled to a judgment by default shall apply to the court therefor.").

The mere entry of default by the Clerk does not in itself warrant the entry of default judgment by the Court. See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). Rather, the Court, in its discretion, must find that there is a "sufficient basis in the pleadings for the judgment to be entered." Id. The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. Id. The clerk's entry of default causes all well-pleaded allegations of facts to be deemed admitted. See Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987). The Court must accept these facts as true and determine whether they state a claim upon which relief may be granted. See Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1370, n.41 (11th Cir. 1987) (citing Nishimatsu, 515 F.2d at 1206). The Court must consider whether the unchallenged facts constitute a legitimate cause of action, since the party in default does not admit

3

a mere conclusion of law.  In considering any default judgment, the Court must examine (1) jurisdiction, (2) liability, and (3) damages. See Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353 (S.D. Ga. 2004).  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).  The remaining considerations, liability and damages, are discussed below.

**B.     Liability under 47 U.S.C. § 605**

Although Plaintiff, in addition to section 605 liability, originally alleged a violation of 47 U.S.C. § 553, for interceptions by way of cable systems, it elects to proceed and receive damages exclusively under section 605.  Plaintiff conveyed the Program via satellite and cable transmission and alleges that Defendants' unauthorized broadcast of the Program was intercepted by either satellite or cable piracy.  Plaintiff contends that it is impossible to determine precisely how Defendants pirated the Program because Defendants did not participate in discovery.  Although the facts established by the default suffice to show Defendants' liability under either 47 U.S.C. §§ 553 or 605, Plaintiff may only recover under one section. J&J Sports Prods., Inc. v. Fitzgerald, No. 1:09-cv-1684-WSD, 2009 WL 3681834, at *2 n.1 (N.D. Ga. Oct. 30, 2009); see Time Warner Cable of N.Y.C. v. Taco Rapido Rest., 988 F. Supp. 107, 110 (E.D.N.Y. 1997) (holding the same).  "In this circumstance, the Court elects to 'giv[e] Plaintiff the benefit of the doubt'" and not fault it "'for failing to plead the particular manner of interception since this may be exclusively in Defendants' knowledge.'" Fitzgerald, WL 3681834, at *3 (quoting J & J Sports Prods., Inc. v. Gallegos, Civ. Act. No. 08-201 (WHW), 2008 WL 3193157, at *7-8 (D.N.J. Aug. 5, 2008)).  Therefore, the Court will determine Defendants' liability under 47 U.S.C. § 605.

After careful review, the Court finds that Plaintiff's complaint sufficiently states a cause of action for violation of 47 U.S.C. § 605.  Section 605(a) of the Communications Act of 1934 states:

No person not being authorized by the sender shall intercept any radio

communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). "Although the statute uses the term 'radio,' all courts construing § 605(a) have assumed that the statute also applies to transmissions and interception of satellite cable programming." DirectTV, Inc. v. Trawick, 359 F. Supp. 2d 1204, 1207 n.6 (M.D. Ala. 2005); see 47 U.S.C. § 605(b). Plaintiff has sufficiently alleged and provided evidence through Plaintiff's Complaint and affidavit, exhibits, and the auditor's affidavit to establish (1) that Defendants intercepted the Program, (2) that Defendants did not pay for the right to receive the transmission, and (3) that Defendants displayed the Program to patrons of its establishment. Accordingly, because the Court finds that Plaintiff's complaint sufficiently establishes Defendants' liability for violation of the Communications Act, the Court **GRANTS** Plaintiff's Motion for Default Judgment [Doc. 7] and now turns its attention to the requested relief.

### C.     Requested Relief

Upon finding a violation of 47 U.S.C. § 605(a), a plaintiff may elect between actual or statutory damages. Kingvision Pay-Per-View Corp., Ltd. v. El Torito Supermarket, Inc., No. 6:06-cv-657-Orl-18KRS, 2007 WL 174158, at *3 (M.D. Fla. June 19, 2007). Here, Plaintiff elects to receive statutory damages and moves the Court to award the maximum amount of statutory damages against Defendants of up to $110,000, plus attorney's fees and costs of $1,686. Before addressing an amount, the Court must address two preliminary issues: the need for a hearing and joint and several liability.

Generally, a district court "may enter a default judgment awarding damages without a hearing only if the amount of damages is a liquidated sum, an amount capable of mathematical

calculation, or an amount demonstrated by detailed affidavits." DirectTV, Inc. v. Huynh, 318 F. Supp. 2d 1122, 1129 (M.D. Ala. 2004); see Taylor v. Wachovia Mortg. Corp., No. 1:07-CV-2671-TWT, 2009 WL 249353, at *11 (N.D. Ga. Jan. 30, 2009) (No evidentiary hearing is required "where an adequate record has been made via affidavits and documentary evidence to show statutory damages.") (internal quotation marks omitted).  The decision of whether to hold a hearing rests in the district court's discretion. Huynh, 318 F. Supp. 2d at 1129.  In this case, Plaintiff has not requested a hearing and has moved only for statutory, and not actual, damages.  Thus, the Court finds that a hearing is not necessary because an adequate record has been made to calculate damages.

Plaintiff requests Defendants be held jointly and severally liable.  "It appears that joint and several liability is available for violations of the Communications Act." Id. at *3; see  Cable/Home Comm. Corp. v. Network Prod., Inc., 902 F.2d 829, 852 (11th Cir. 1990) (declining to disturb award of joint and several damages between corporate and individual defendants).  To hold Defendant McBroom vicariously liable in his individual capacity and as officer, director, shareholder, and/or principal of the Restaurant, Plaintiff must show that McBroom had a "right and ability to supervise the violations, and that he had a strong financial interest in such activities." J&J Sports Prods., Inc. v. Arboleda, No. 6:09-cv-467-Orl-18DAB, 2009 WL 3490859, at *5 (M.D. Fla. Oct. 27, 2009) (internal quotation marks omitted).  By virtue of the default, McBroom has admitted that he had supervisory control over the Restaurant's decision to broadcast the Program and that he received financial benefit from it.  Therefore, Plaintiff is entitled to joint and several liability for damages against McBroom in both an individual and corporate capacity.

Having addressed these matters, the Court must now determine the amount of statutory damages Plaintiff may recover.  Under section 605, Plaintiff may be awarded statutory damages and

6

reasonable attorney's fees and costs.  If Plaintiff can also show that Defendants' violation was willful, Plaintiff may be awarded enhanced damages as well.

            1.     *Statutory Damages*

District courts have "considerable discretion in determining the appropriate amount of damages." Id. at *4; see Cable/Home, 902 F.2d at 852 (holding that district courts have "wide latitude" in determining statutory damages).  For each violation of the statute, the aggrieved party may recover "a sum of not less than $1,000 or more than $10,000 as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).  Plaintiff seeks the maximum amount of statutory damages.

The Eleventh Circuit has not addressed a uniform formula for calculating statutory damages under section 605.  Some courts award damages as a flat sum. See, e.g., Joe Hand Prods., Inc. v. Leon, No. 1:06-CV-1180-JOF, 2007 WL 4097412, at *2 (N.D. Ga. Oct. 31, 2007) (awarding $3,000 in statutory damages); Trawick, 359 F. Supp. 2d at 1208 (awarding $1,000); Huynh, 318 F. Supp. 2d at 1132 (awarding $1,000).  Other courts award the plaintiff the license fee the defendant, based on its maximum capacity, would have paid if it had legally purchased the event for exhibition. See, e.g., Arboleda, 2009 WL 3490859, at *7 (calculating statutory damages as the equivalent of the license fee based on the maximum capacity of restaurant); El Torito, 2007 WL 1794158, at *4 (same); J&J Sports Prods., Inc. v. Benson, No. 06-CV-1119, 2007 WL 951872, at *5 (E.D.N.Y. Mar. 27, 2007) (same).

This Court finds the latter approach to be sound and reasonable and will award statutory damages in an amount equal to the license fee Defendants would have paid if it had legally purchased the right to exhibit the Program.  Plaintiff submitted a "rate card" detailing the fee for establishments like the Restaurant, based on maximum capacity, to broadcast such programs. (Exhibit A).  In this case, the Restaurant's maximum capacity is 200 patrons.  Thus, based on the

rate card, Plaintiff would have charged $1,100 for the Restaurant to broadcast the Program. Therefore, the Court awards Plaintiff statutory damages in the amount of $1,100.

2.    *Enhanced Damages*

Plaintiff also seeks up to an additional $100,000 in enhanced damages.  Under the statute, enhanced damages may be awarded when the violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). "Willfulness is defined as 'disregard for the governing statute and an indifference for its requirements.'" J&J Sports Prods., Inc. v. Guzman, 553 F. Supp. 2d 195, 199 (E.D.N.Y. 2008 (quoting Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)).  Courts have found that willfulness under section 605 is "established by the fact that an event is broadcast without authorization." Id.; see Leon, 2007 WL 4097412, at *2 (holding that defendants' conduct of broadcasting encrypted program without authorization established willfulness); J&J Sports Prods., Inc. v. Kosoria, No. 06-CV-2102 KMK, 2007 WL 1599168, at *3 (S.D.N.Y. June 1, 2007) (holding an encrypted satellite program "cannot be intercepted without engaging in a willful act"); Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 490-91 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously").   In Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc., the district court held:

> Based on the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance, however, courts have held conduct such as that of [defendant] in this case to be willful and for the purposes of direct or indirect commercial advantage or private financial gain.

219 F. Supp. 2d 769 (S.D. Tex. 2002).

Here, the Court finds Defendants willfully violated section 605.  It is difficult for this Court to see how Defendants could have accidentally intercepted and exhibited the encrypted Program;

the signal had to be unscrambled by some deliberate act. See Arboleda, 2009 WL 3490859, at *5 ("By virtue of default, the Defendants have admitted to exhibiting the Program in the Restaurant, a commercial establishment, willfully and for financial gain."). Therefore, the Court finds that Defendants' broadcast of the Program without Plaintiff's authorization is enough to show a willful violation committed for the purpose of direct or indirect financial gain.

Having found that Defendant's violation of section 605 was willful, the Court must now decide the amount of enhanced damages to award Plaintiff. In determining the amount of enhanced damages, courts consider several factors: "(1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge." J&J Sports Prods., Inc. v. Tu, No. 08 C 4119, 2008 WL 4833116, at *2 (N.D. Ill. Oct. 29, 2008). In connection with the above factors, "courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." Id. Therefore, courts typically force the defendant to pay some multiple of the license fee. Arboleda, 2009 WL 3490859, at *7. Courts facing a similar fact pattern as in this case have awarded enhanced damages of three times what it would have cost Defendants to lawfully exhibit the Program. See, e.g., Arboleda, 2009 WL 3490859, at *7 (holding that a multiple of three was appropriate when no evidence existed of cover charge, advertisement, or repeated violations); J&J Sports Prods., Inc. v. Ribeiro, 562 F. Supp. 2d 498, 502 (S.D.N.Y. 2008) (holding that a multiple of three was sufficient when 13 patrons were in 100-maximum capacity restaurant and no evidence existed of cover charge or repeated violations); Kingvision Pay-Per-View Corp., LTD. v. Wright, No. 8:06-cv-892-T-30MAP, 2006 WL 4756450 (M.D. Fla. Oct. 27, 2006) (holding that multiple of three was sufficient for defendant's first known

violation).

While not bound by it, the Court finds this approach persuasive. Here, there is no evidence based on the auditor's affidavit that the Restaurant had repeated violations, advertised the Program, or collected a cover charge. The Restaurant had a 200-person maximum capacity and drew only eight patrons on the night Defendants broadcast the Program, suggesting that it made only a modest profit from the unlawful exhibition. Thus, the Court will award enhanced damages amounting to three times the statutory damages of $1,100, which equals $3,300. Such an amount reflects the seriousness of Defendants' conduct, affords Plaintiff sufficient recovery based on the evidence submitted, and should provide a deterrent to future violations.

### 3.    Attorney's Fees and Costs

Plaintiff also seeks an award of reasonable attorney's fees and other litigation costs in accordance with 47 U.S.C. § 605(e)(3)(B)(iii). This section provides that a district court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to any aggrieved party." 47 U.S.C. § 605(e)(3)(B)(iii). An "award of attorneys' fees is mandatory, but the court must determine a reasonable fee," which is within its discretion. El Torito, 2007 WL 1794158, at *5.

In determining the appropriate amount of attorney's fees, the Court must calculate the "lodestar," which is the number of hours reasonably spent working on the case multiplied by a reasonable hourly rate. Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000). The Court may make any adjustments to the lodestar calculation for other considerations not yet factored into the lodestar amount. Id. The Court notes that "the starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate." Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). "A reasonable hourly rate is the prevailing market rate in the relevant legal

community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Id. The Court further notes that, in determining a reasonable hourly rate, the Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (citing Norman, 836 F.2d at 1299).

Plaintiff seeks $1,186 in attorney's fees and $500 in costs for a total amount of $1,686. Plaintiff submitted a detailed affidavit breaking down the attorney's fees, along with a third party invoice indicating the cost of service of process. The 7.5 hours spent on this case consists of 5 attorney hours at a rate of $200 per hour and 2.5 paralegal hours at a rate of $75 per hour. Upon review of Plaintiff's counsel's affidavit, the Court is satisfied with the explanation of hours expended in this case. 7.5 hours is a reasonable amount of time to spend bringing this case, which included drafting a complaint, a motion for entry of default, and a motion for default judgment. Additionally, based on Plaintiff's counsel's experience and the prevailing rates in the Middle District of Georgia, the Court finds both the attorney's rate of $200 per hour and the paralegal's rate of $75 per hour to be reasonable. Therefore, Plaintiff is entitled to $1,686 in attorney's fees and costs.

## CONCLUSION

For the foregoing reasons, the Court **HEREBY GRANTS** Plaintiff's Motion for Default Judgment [Doc. 7]. Statutory damages to be awarded are the equivalent of the license fee for the maximum capacity (200) of the Restaurant, or $1,100, plus enhanced damages of three times that amount, or $3,300, for a total statutory damages award of $4,400. Additionally, Plaintiff is awarded $1,686 for reasonable attorney's fees and costs. The total amount payable to Plaintiff is $6,086.

11

**SO ORDERED**, this 15th day of December, 2009.

S/ C. Ashley Royal
C. ASHLEY ROYAL,
UNITED STATES DISTRICT JUDGE

APG/ssh